1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   DORIAN ANGUIANO,                      Case No.:  18cv2056-BAS (RBM)

12                          Petitioner,
                                            **REPORT AND RECOMMENDATION**
13   v.                                     **OF UNITED STATES MAGISTRATE**
                                            **JUDGE RE: DENYING PETITION**
14   CHARLES CALLAHAN, Warden, et al.,      **FOR WRIT OF HABEAS CORPUS**
                                Respondents.
15

16

17          Dorian Anguiano is a state prisoner proceeding pro se and in forma pauperis with a

18   Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  He was

19   convicted pursuant to a plea agreement in the San Diego County Superior Court of corporal

20   injury to a spouse or roommate with great bodily injury and sentenced to a stipulated term

21   of seven years in prison.  (Id. at 1-2, 24.)  He claims his federal constitutional right to the

22   effective assistance of counsel was violated because his retained trial counsel miscalculated

23   his maximum sentence exposure as fourteen years, and he would not have agreed to serve

24   seven years had he known his true exposure was ten years, eight months (claim one), trial

25   counsel's error was not discovered by counsel appointed to represent him on a motion to

26   withdraw the plea, resulting in the forfeiture of claim one (claim two), and the state court

27   erred in finding he was not prejudiced by counsels' errors because his sentence exposure

28   was not a substantial inducement to enter his plea (claim three).  (Id. at 6-8, 14-26.)

                                              1

Respondent has filed an Answer and lodged the state court record. (ECF Nos. 10-11, 19.) Respondent contends the Petition presents a single claim of ineffective assistance of counsel at the plea bargaining stage based on allegations that Petitioner's retained trial counsel was deficient in advising him that his maximum sentence exposure was fourteen years rather than the correct term of ten years, eight months, and that he was prejudiced by the deficient performance because he would not have entered his plea and accepted a seven-year sentence had he been correctly advised of his maximum exposure. (ECF No. 10-1 at 20.) Respondent argues federal habeas relief is not available as to that claim because it is procedurally defaulted in this Court as a result of its forfeiture in state court by the failure to present it in the motion to withdraw the plea, and alternately because the rejection of the claim by the state court on the basis the record does not corroborate Petitioner's contention that he would not have pleaded guilty if he knew his exposure was ten years, eight months rather than fourteen years, is neither contrary to, nor an unreasonable application of, clearly established federal law. (Id. at 20-35.) Respondent contends that to the extent claim two presents a separate claim of ineffective assistance of appointed counsel on the motion to withdraw the plea based on allegations that counsel was deficient in failing to learn of retained trial counsel's mistaken sentence exposure calculation and raise claim one in the motion to withdraw the plea, Petitioner has failed to exhaust state court remedies because that claim has never been presented to the state supreme court and state court remedies remain available. (Id. at 36-39.) Respondent argues that if the Court finds that claim two presents a separate, unexhausted claim, the entire Petition should be dismissed without prejudice as containing both exhausted and unexhausted claims unless: (a) Petitioner chooses to abandon claim two or requests the Court to stay this action and hold his Petition in abeyance while he exhausts available state remedies, or (b) the Court denies claim two notwithstanding the failure to exhaust on the ground it does not present a colorable claim for relief because appointed counsel was under no obligation to present claim one in the motion to withdraw the plea as it is an untenable claim for the same reasons claim one fails on the merits. (Id. at 39-42.)

1   Petitioner has filed a Traverse. (ECF No. 18.) He contends that his Petition alleges
2   a single claim of ineffective assistance of counsel arising from his retained trial counsel's
3   failure to properly advise him regarding his maximum sentence exposure, which he raised
4   in the state appellate and supreme courts. (Id. at 23-37.) He contends his Petition does not
5   raise an unexhausted claim of ineffective assistance of counsel on the motion to withdraw
6   the plea, that any default in this Court arising from the forfeiture of his ineffective
7   assistance of trial counsel claim in state court should be excused because he was denied a
8   fair opportunity to raise it in state court, and that he is entitled to an evidentiary hearing in
9   this Court on his claim of ineffective assistance of trial counsel. (Id.)

10      As set forth herein, the Court recommends federal habeas relief be denied as to claim
11  one notwithstanding a possible procedural default and without an evidentiary hearing
12  because the adjudication by the state court is neither contrary to, nor an unreasonable
13  application of, clearly established federal law, and is not based on an unreasonable
14  determination of the facts in light of the evidence presented in the state court proceedings.
15  The Court finds that Petitioner has exhausted state court remedies as to claim two and
16  recommends habeas relief be denied on that claim because the adjudication by the state
17  court is also neither contrary to, nor an unreasonable application of, clearly established
18  federal law, nor based on an unreasonable determination of the facts in light of the evidence
19  presented in the state court proceedings. The Court finds that claim three merely restates
20  the prejudice argument in claim one and fails for the same reasons claim one fails. The
21  Court recommends the Petition be denied.

22  **I.    PROCEDURAL BACKGROUND**

23      In a three-count felony Complaint filed on August 18, 2016, deemed an Information
24  at the preliminary hearing on September 19, 2016, Petitioner was charged with kidnapping
25  in violation of California Penal Code § 207(a) (count one), corporal injury to a spouse or
26  roommate in violation of California Penal Code § 273.5(a) (count two), and assault by
27  means likely to produce great bodily injury in violation of California Penal Code
28  § 245(a)(4) (count three). (Lodgment No. 2, Clerk's Tr. ["CT"] at 5-8.) Counts two and

three alleged he personally inflicted great bodily injury on the victim within the meaning of California Penal Code § 1192.7(c)(8), and personally inflicted great bodily injury on the victim under circumstances involving domestic violence within the meaning of California Penal Code § 12022.7(e). (Id.) The Information alleged he was ineligible for probation due to three prior convictions. (CT 7.) He was represented by retained counsel at the preliminary hearing on September 19, 2016, which was also an evidentiary hearing on a probation violation as he was on felony probation at the time of the offenses, at which his probation was revoked and he was bound over for trial on all three counts. (Lodgment No. 1.)

On October 13, 2016, Petitioner entered a guilty plea to count two and admitted both great bodily injury allegations associated with that count. (CT 11-14.) The plea agreement provided for dismissal of the other two counts and a stipulated sentence of seven years in prison followed by four years of parole, with a $10,000 fine. (Id.) Petitioner relieved his retained counsel prior to sentencing, and the public defender was appointed to represent him on a motion to withdraw his plea. (CT 66-67.) On December 27, 2016, his appointed public defender filed a motion to withdraw the plea on the basis that Petitioner "mistakenly relied on the representation of his attorney that he would be allowed to withdraw his guilty plea at any time prior to sentencing." (CT 16-22.) On February 3, 2017, a hearing was held where the victim, Petitioner, and his retained trial counsel testified, after which the motion to withdraw the plea was denied and Petitioner was sentenced to the stipulated term of seven years in state prison. (CT 69-70.)

Petitioner was appointed new counsel on appeal, and on October 23, 2017, counsel filed an appeal arguing the denial of the motion to withdraw the guilty plea was an abuse of discretion because Petitioner was told by his trial counsel he was allowed to withdraw his plea prior to sentencing. (Lodgment No. 6.) The appellate court affirmed on February 23, 2018. (Lodgment No. 9.)

On March 20, 2018, appointed appellate counsel filed a habeas petition in the state appellate court alleging, as Petitioner does here, that he was denied effective assistance of

counsel because his retained trial counsel erroneously advised him that his maximum sentence exposure was fourteen years rather than the correct term of ten years, eight months, that he would not have entered a guilty plea and accepted a seven-year sentence but would have insisted on going to trial had he been told his maximum exposure was ten years, eight months, and would have asked his appointed counsel at the motion to withdraw his plea to raise that issue if she had advised him that his trial counsel had miscalculated his potential exposure. (Lodgment No. 11.) On March 28, 2018, the appellate court denied habeas relief on the basis that: (1) the ineffective assistance of trial counsel claim was forfeited because it could have been but was not raised in the motion to withdraw the plea, and alternately denied on the merits as there was no support in the record corroborating Petitioner's contention he would not have pleaded guilty had he known his maximum exposure was ten years, eight months rather than fourteen years, and (2) his appointed attorney did not act deficiently in failing to raise that claim in the motion to withdraw the plea because counsel is not required to raise every conceivable claim, and Petitioner was not prejudiced by that failure because the record did not show his maximum sentence exposure was a substantial inducement to enter his plea. (Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 1-3 (Cal.Ct.App. Mar. 28, 2018.) A petition for review of the denial of habeas relief was filed in the California Supreme Court on May 10, 2018, and summarily denied on June 13, 2018. (Lodgment Nos. 14-15.)

## II.   FACTUAL BACKGROUND

The statement of facts is taken from the state appellate court opinion on direct appeal. (Lodgment No. 9, People v. Anguiano, No. D071738, slip op. at 1 n.2 (Cal.Ct.App. Feb. 23, 2018) ("We draw the factual background from the preliminary hearing transcript and the change of plea form because Anguiano entered his plea before trial."))

> On the evening of August 6, 2016, surveillance video showed Anguiano and the victim drive into the parking lot of a motel where he had rented a room. Once parked, Anguiano struck the victim in the face. The victim slumped against the passenger side window for several seconds. When the victim roused, the victim appeared upset and attempted to strike Anguiano numerous times as they talked. Anguiano deflected most of the strikes with

his arm.

When the victim got out of the car, Anguiano also exited the car and walked quickly around the back of the car to the passenger side. While the victim's back was turned toward him, Anguiano kicked the victim's back on the left side, knocking the victim to the ground. As the victim lay face down on the ground, Anguiano kicked the left side of the victim's head causing the head to snap back. The victim lay motionless on the ground as Anguiano locked the car and walked away.

The motel manager and his wife called the police after they witnessed the incident through a closed-circuit television feed. When the motel manager's wife confronted Anguiano, and told him they were calling the police, Anguiano returned to the car. He lifted the victim's limp body from the ground, falling backwards with the victim at one point. He put the victim in the car and drove away quickly.

Based upon the description of the car and a partial license plate number provided by the motel manager, police officers located Anguiano's car at Anguiano's home approximately four miles from the motel. Officers found the victim sitting in Anguiano's car covered in dried blood, which the victim was trying to clean. The victim was conscious and refused medical treatment. The victim had an abrasion of about one and a half inches in diameter on the left cheekbone, a large lump above the left eyebrow, and a cut to the left corner of the mouth. The victim's face was swollen. The victim had been in an "off and on relationship" with Anguiano for about three years. The victim did not want to get Anguiano in trouble.

The victim did not remember what happened after the victim and Anguiano left a restaurant that evening. The victim acknowledged a possible loss of consciousness. The victim called the police on 10 other occasions about domestic violence by Anguiano. Anguiano was arrested for domestic violence at least once.

Three days later, the victim confirmed being at the motel, but could not remember what happened during the incident. The left side of the victim's face, from the cheekbone to the chin, was still bruised. The victim's ribs and head still hurt. The victim had difficulty walking and breathing.

Anguiano pleaded guilty to inflicting corporal injury upon a spouse or a roommate (Pen. Code, § 273.5, subd. (a); count 2) and admitted allegations he inflicted great bodily injury in committing the crime (Pen. Code, §§ 1192.7, subd. (c)(8), 12022.7, subd. (e)). In exchange for the plea agreement, the

People dismissed charges for kidnapping (Pen. Code, § 207, subd. (a); count 1) and assault by means likely to cause great bodily injury (Pen. Code § 245, subd. (a)(4); count 3) along with an allegation of inflicting great bodily injury relating to count 3. Anguiano agreed to a stipulated sentence of seven years with respect to count 2.

On the plea form, Anguiano admitted, "I pushed/kicked (the victim) to the ground, after which I kicked (the victim) in the face causing serious injury. . . . I personally inflicted great bodily injury upon (the victim), someone I had a dating relationship with."

At the change of plea hearing, the court confirmed Anguiano read and understood the plea form. He understood the terms of the plea and talked to his lawyers about his rights. When asked if any other promises or threats were made to get him to plead guilty, Anguiano stated, "No, none." Anguiano pleaded guilty. The court found the plea was knowingly, voluntarily, and intelligently made.

Prior to sentencing, Anguiano moved to withdraw his plea. He contended his former attorney advised him he could withdraw his plea before sentencing. He stated if the attorney had not assured him he could take his guilty plea back before sentencing, Anguiano would not have entered the plea.

The court heard evidence from Anguiano, the victim, and Anguiano's former attorney. The former attorney stated he did not promise Anguiano could withdraw his guilty plea.

The court denied the motion noting the court had the benefit of presiding over the preliminary hearing, watching the video, and accepting the change of plea. The court stated it believed the attorney's statement over that of Anguiano. It found no good cause to withdraw the plea because there was no mistake or later discovered evidence. Pursuant to the terms of the agreement, the court sentenced Anguiano to seven years in state prison.

(Id. at 2-5.) The state appellate court described Petitioner's habeas claims as alleging:

[H]is retained counsel provided constitutionally ineffective assistance by incorrectly advising him before the plea agreement that his prison exposure, if convicted of all charges, was seven to 14 years. Anguiano also asserts the appointed attorney who represented him when he moved to withdraw his guilty plea provided ineffective assistance because she did not tell him his prior attorney had given incorrect information about his maximum prison

exposure. Anguiano contends he learned for the first time that his maximum exposure would have been 10 years, eight months from his appellate counsel. Anguiano asserts he would not have agreed to plead guilty and serve seven years in prison had he known his maximum prison exposure was only 10 years, eight months.

(Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 1.)

## III.  CLAIMS PRESENTED IN THE PETITION

(1)  Petitioner's Sixth Amendment right to the effective assistance of counsel was denied by trial counsel's erroneous advice that his maximum sentence exposure was fourteen years, and he would not have entered his plea had he been properly advised his exposure was ten years, eight months. (ECF No. 1 at 6, 14-16.)

(2)  Petitioner's Sixth Amendment right to the effective assistance of counsel was denied by the failure of counsel appointed to represent him on the motion to withdraw his plea to discover that his trial counsel had miscalculated his sentence exposure and raise claim one in the motion to withdraw the plea, and the appellate court erred in finding he could have raised claim one in the motion to withdraw the plea because he did not become aware he was misadvised by trial counsel until informed by appellate counsel after the notice of appeal was filed. (Id. at 7, 16-20.)

(3)  The state appellate court erred in finding that the record fails to corroborate Petitioner's assertion that he would not have pleaded guilty and would have insisted on going to trial but for the erroneous advice by retained trial counsel regarding his maximum sentence exposure. (Id. at 8, 21-23.)

In his Traverse, Petitioner states that despite having presented three separate claims in his federal Petition, he intends to present one cohesive claim, the same claim presented to the California Supreme Court in his petition for review of the appellate court's denial of his habeas petition, that he received ineffective assistance of counsel in connection to his plea. (ECF No. 18 at 23-26.)  The description of his claims in the Petition consists of a copy of his state supreme court petition for review. (Compare ECF No. 1 at 14-23 with ECF No. 19-1 at 9-18.)  As discussed below, even to the extent claims two and three present

8

separate claims, they fail for the same reasons claim one fails.

## IV.   DISCUSSION

As set forth herein, the Court recommends habeas relief be denied as to claim one notwithstanding any procedural default and without holding an evidentiary hearing because the state court adjudication is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  To the extent claim two presents a separate claim of ineffective assistance of counsel on the motion to withdraw the plea, the Court finds state court remedies have been exhausted and recommends it be denied on the basis that the state court adjudication is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  The Court finds claim three merely restates the prejudice argument in support of claim one, and to the extent it presents a separate claim it fails for the same reason as claim one.  The Court therefore recommends the Petition be denied.

### A.   Standard of Review

In order to obtain federal habeas relief with respect to claims adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.A. § 2254(d) (West 2006).  Even if § 2254(d) is satisfied, a petitioner must show a federal constitutional violation occurred in order to obtain relief.  Fry v. Pliler, 551 U.S. 112, 119-22 (2007); Frantz v. Hazey, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different

from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. In order to satisfy § 2254(d)(2), the factual findings upon which the state court's adjudication of Petitioner's claims rest must be objectively unreasonable. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### B.     Claim One

Petitioner contends in claim one that he was denied his right to effective assistance of counsel under the Sixth Amendment because his retained trial counsel incorrectly advised him that his maximum sentence exposure was fourteen years rather than the correct term of ten years, eight months. (ECF No. 1 at 6, 14-16.) He argues, as he did in state court, that: (1) he would not have entered a plea if he had been properly advised of his maximum sentence exposure, (2) the state appellate court erred in finding he forfeited the claim on appeal because he could have but did not raise it in his motion to withdraw his plea, as he did not become aware of his correct exposure until his appointed appellate counsel told him after the notice of appeal was filed, and (3) the state court erred in finding the record did not corroborate his contention that he would not have pleaded guilty and agreed to serve seven years if he had known his maximum exposure was ten years, eight months rather than fourteen years. (<u>Id.</u>)

Respondent answers that this claim is procedurally defaulted because the state appellate court found it was forfeited by the failure to raise it in the motion to withdraw the plea, and the Court cannot grant relief because Petitioner has not shown cause, prejudice or a fundamental miscarriage of justice to excuse the default. (ECF No. 10-1 at 21-28.) Respondent alternately contends habeas relief is unavailable because the adjudication of the claim by the state court, on the basis that Petitioner failed to show trial counsel's erroneous advice was prejudicial because the record does not support a finding his sentence exposure was a substantial inducement to enter his plea, is neither contrary to, nor involves

18cv2056-BAS (RBM)

an unreasonable application of, clearly established federal law. (Id. at 28-35.)

Claim one was presented to the state supreme court in a petition for review of the state appellate court denial of Petitioner's habeas petition. (Lodgment No. 14.) The state supreme court denied the petition for review in an order which stated: "The petition for review is denied." (Lodgment No. 15, In re Anguiano, No. S248112 (Cal. June 13, 2018).) The state appellate court denied the claim in a reasoned opinion. (Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 1-3.)

There is a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991). The appellate court opinion denying habeas relief states:

> Anguiano is not entitled to habeas corpus relief. He raises a claim of ineffective assistance that was not, but could have been, asserted in the motion to withdraw his guilty plea (In re Seaton (2004) 34 Cal.4th 193, 200), and constitutes a successive attack on the judgment (In re Connor (1940) 16 Cal.2d 701, 705). The factual and legal bases for Anguiano's current claim concerning erroneous advisement of the maximum prison term were available at the time he filed his motion to withdraw his guilty plea, but he did not include that claim in the motion.
>
> Even if Anguiano's petition was not barred by his failure to present his issues in the superior court, it would be denied. To establish ineffective assistance of counsel, Anguiano "must demonstrate both deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of reasonable probability of an adverse effect on the outcome." (People v. Waidla (2000) 22 Cal.4th 690, 718.) When a defendant shows that his attorney gave him incorrect advice about the risks of going to trial, he has not received the effective assistance of which he is constitutionally entitled. (See People v. Plager (1987) 196 Cal.App.3d 1537, 1543; People v. Brown (1986) 177 Cal.App.3d 537, 545-546.) In the guilty plea context, defendant must establish "a reasonable probability that, but for counsel's incompetence, (he) would not have pleaded guilty and would have insisted on proceeding to trial. (Citation.)" (In re Alvernaz (1992) 2 Cal.4th 924, 934.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Strickland v. Washington (1984) 466 U.S. 668, 694.)

Concerning Anguiano's claim that his retained counsel at the plea bargaining stage was ineffective for providing inaccurate information about the maximum prison exposure, Anguiano claims prejudice, citing to *People v. Johnson* (1995) 36 Cal.App.4th 1351. In that case, trial counsel had miscalculated defendant's maximum potential sentence by 11 years. The appellate court found that defendant was prejudiced because "the failure of defendant's counsel to correctly advise him of his maximum potential sentence was a substantial inducement in his decision to plead nolo contender. By accepting the plea bargain, defendant believed he may have cut his sentence almost by half, from a potential 38 years to 20, which under any circumstances would be a powerful inducement to plead. Even so, . . . defendant had reservations about the wisdom of entering the plea bargain as was demonstrated by his attempt to withdraw the plea on other grounds." (*Id.* at p. 1358.)

Unlike *Johnson*, it cannot "be fairly concluded that the failure of defendant's counsel to correctly advise him on his maximum potential sentence was a substantial inducement in his decision" to plead guilty. (*Johnson, supra*, 36 Cal.App.4th at p. 1358.) Anguiano's assertion that he would not have pleaded guilty if given competent advice "'must be corroborated independently by objective evidence.' (Citations.)" (*In re Resendiz* (2001) 25 Cal.4th 230, 253.) At the hearing on Anguiano's motion to withdraw his guilty plea, his original counsel testified that a maximum exposure of 14 years "sound(ed) about right," but he could not specifically remember advising Anguiano of that term. Retained counsel did not state that Anguiano was not amenable to accepting the plea. Rather, counsel testified that Anguiano went back and forth about the decision to plead guilty and ultimately decided to "get it over with." According to counsel, Anguiano was "apprehensive" about the plea bargain, but his concern was not about the length of his sentence; instead, it was about the emotional impact criminal proceedings would have on his daughters. The record does not include objective evidence corroborating Anguiano's claim that he would not have pleaded guilty if he had known his maximum exposure was 10 years, eight months, rather than 14 years.

Concerning Anguiano's claim that appointed counsel who represented him on his motion to withdraw his guilty plea was ineffective, Anguiano asserts that had the new attorney told him his maximum prison exposure, he would have asked her to raise his original counsel's ineffective assistance as another basis to withdraw the guilty plea. Anguiano's contention is insufficient to avoid the procedural bars to habeas corpus relief. Counsel has no obligation to present every conceivable claim, and performs competently

12

by presenting those claims counsel deems the strongest. (*In re Reno* (2012) 55 Cal.4th 428, 463-465.) Anguiano has provided no evidence concerning the reasons for the decisions counsel made on the plea withdrawal motion. Further, as we previously explained, the record does not show the maximum prison sentence was a substantial inducement in Anguiano's decision to plead guilty. Thus, Anguiano has not shown counsel on the plea withdrawal motion performed deficiently and thereby prejudiced Anguiano.

(Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 2-3.)

### 1.    Procedural Default

As a general rule, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Respondent bears the initial burden of adequately pleading the existence of an independent and adequate state procedural ground. Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003). The burden then shifts to Petitioner to show the procedural bar is not adequate and independent, such as showing a lack of consistent application, and if he is successful the ultimate burden is on Respondent to show the procedural bar has been regularly and consistently applied. Id. If the claim is defaulted, federal habeas review is barred unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

As set forth above, the state appellate court found claim one forfeited because Petitioner could have but did not raise it in his motion to withdraw his plea, and denied it on the alternative basis it failed on the merits. The claim was then presented to the state supreme court in a petition for review which was summarily denied. There is nothing in the record to overcome the presumption that the state supreme court's silent denial adopted the reasoning of the appellate court, that the claim is barred by the failure to raise it in the motion to withdraw and it alternately fails on the merits.

"If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been

available." Ylst, 501 U.S. at 801, citing Harris v. Reed, 489 U.S. 255, 262 (1989). That the state court reached the merits in the alternative does not preclude a procedural default. Harris, 489 U.S. at 264, n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.")

Respondent contends the Ninth Circuit has recognized that state contemporaneous objection rules, such as the one applied to claim one here, are independent and adequate. (ECF No. 10-1 at 24-25.) However, Respondent recognizes that at least one district court has questioned whether that Ninth Circuit authority applies where a California court bars a claim raised for the first time on state habeas. (Id. at 25, citing Jati v. Long, 2013 WL 5720161 at *9 (C.D. Cal. 2013) (stating it was not clear whether respondent had met the burden of showing that the state court rule precluding raising a claim alleging improper admission of incriminating statements for the first time on habeas is independent and adequate, particularly in light of respondent's failure to address application of the Seaton case by the state court). The state court in this case also relied on Seaton, 34 Cal.4th at 200, for the proposition that Petitioner could not raise on state habeas a claim of "ineffective assistance that was not, but could have been, asserted in the motion to withdraw his guilty plea." (Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 2.) Page 200 of the Seaton case, cited by the appellate court here, states:

> Thus, just as a defendant generally may not raise *on appeal* a claim not raised at trial, a defendant should not be allowed to raise on *habeas corpus* an issue that could have been presented at trial. If a claim that was forfeited for appeal could nonetheless be raised in a habeas corpus proceeding, the main purpose of the forfeiture rule-to encourage prompt correction of trial errors and thereby avoid unnecessary retrials-would be defeated.
>
> This does not mean, however, that there is no recourse when a defendant's rights are violated at trial and defense counsel does not object. If counsel's omission falls "below an objective standard of reasonableness . . . under prevailing professional norms" (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688), the defendant may assert the error in a habeas corpus

petition "clothed in 'ineffective assistance of counsel' raiment." (*Harris, supra*, 5 Cal.4th at p. 833.) The defendant would be entitled to habeas corpus relief if there is a "reasonable probability" (*Strickland v. Washington, supra*, 466 U.S. at p. 694) that defense counsel's incompetence in not objecting affected the trial's outcome.

*Seaton*, 34 Cal.4th at 200; see also id. at 208 (Brown, J., concurring and dissenting) ("In this instance the majority [formulates] a quintessential form-over-substance rule. As the majority perforce acknowledges, any failure to preserve an appealable issue by appropriate objection can—and will—be raised on habeas corpus, recast as a claim of ineffective assistance of counsel.")

As Respondent appears to acknowledge, the Seaton bar as applied in this case may not be independent of federal law because it appears to be dependent upon or duplicative of an inquiry into Petitioner's federal constitutional right to effective assistance of counsel.[1] Ibid; see Coleman, 501 U.S. at 735 (holding that federal habeas courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"), quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983) (holding that to be independent the state bar must not be interwoven with federal law); see also Nitschke v. Belleque, 680 F.3d 1105, 1109-10 (9th Cir. 2012) ("A review of pertinent Supreme Court caselaw illustrates that a state court ruling, even on a state procedural issue, that necessarily or actually depends on an antecedent ruling *on the merits* of a federal claim is interwoven with federal law and therefore not independent.")

---

[1] The appellate court here also relied on Connor, 16 Cal.2d at 705, for the proposition that Petitioner's claim constituted a successive attack on the judgment. Even if that rule is adequate and independent, the Seaton bar must also be adequate and independent. See Washington v. Cambra, 208 F.3d 832, 834 (9th Cir. 2000) (holding that all state procedural bars applied to a claim must be adequate to support the judgment and independent of federal law to support a procedural default.)

18cv2056-BAS (RBM)

Even if Respondent has carried the burden of pleading an adequate and independent state procedural rule, Petitioner contends the state court erroneously applied that rule in his case because it found he could have but did not raise the claim in his motion to withdraw his plea, despite the fact that he was unaware of the claim until he was informed by his appellate counsel after the notice of appeal was filed, and despite the fact that his trial counsel, the trial judge, the prosecutor, and counsel on the motion to withdraw the plea all failed to identify the miscalculation of his sentence exposure. A procedural default does not arise where a state court erroneously applies a state procedural rule. Sivak v. Hardison, 658 F.3d 898, 907 (9th Cir. 2011); see also Lee v. Kemna, 534 U.S. 362, 376 (2002) ("There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.")

If claim one is procedurally defaulted, the Court must still examine the merits of the ineffective assistance of retained and appointed counsel claims to determine whether cause and prejudice exists to excuse the default. See Murray v. Carrier, 477 U.S. 478, 488 (1986) ("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State."); Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000) ("Although we have not identified with precision exactly what constitutes "cause" to excuse a procedural default, we have acknowledged that in certain circumstances *counsel's ineffectiveness in failing properly to preserve the claim for review in state court* will suffice. Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution.") (citation omitted) (emphasis added).

The Ninth Circuit has indicated that: "Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.") Because claim one fails on the merits,

the Court finds the interests of judicial economy counsel in favor of denying it without making a determination whether Respondent has carried the burden of showing the state procedural rule is independent of federal law and adequate to support the judgment, and if so, whether Petitioner has shown or could show that the state procedural rule is not adequate and independent or that its application in his case was erroneous or exorbitant, and if not, whether he could show cause and prejudice or a fundamental miscarriage of justice sufficient to excuse the default.

## 2. Merits

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler v. Cooper, 566 U.S. 156, 168 (2012). The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Baylor v. Estelle, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that Strickland "has long been clearly established federal law determined by the Supreme Court of the United States.") Petitioner must show that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. He must also show counsel's deficient performance prejudiced him, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. The Strickland prejudice analysis as applied to plea bargains "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Both deficient performance and prejudice must be established to show constitutionally ineffective assistance of counsel. Strickland, 466 U.S. at 697.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). In addition, 28 U.S.C. § 2254(d) presents "a 'difficult to meet' and

'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, 563 U.S. 170, 181 (2011), quoting Harrington v. Richter, 562 U.S. 86, 102 (2011) and Woodford v. Visciotti, 537 U.S. 19, 24 (2002). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted).

At the hearing on the motion to withdraw his plea, Petitioner testified that he retained attorney Alan Spears on August 8, 2016, and was told by Spears at the arraignment on August 18, 2016, that he was facing life in prison and the prosecution had not made a plea offer. (Lodgment No. 4, Reporter's Tr., 2/3/17 [ECF No. 11-4] at 110-12.) After the preliminary hearing on September 19, 2016, Spears told Petitioner the prosecution had made a plea offer of seven years, at which time Petitioner still believed he was facing life in prison. (Id. at 112-13.) Petitioner said he began crying and told Spears he was not comfortable with the offer because it was too much time and he had not had the opportunity for his evidence to be presented. (Id. at 113.) He said he had placed two hours of video recordings he made of interactions between himself and the victim on a USB computer drive, which he mailed to Spears prior to the preliminary hearing, which he said proved he had been falsely arrested on prior occasions for assaulting her, and said he was surprised when Spears told him he had not yet viewed those videos. (Id. at 113-16.) Petitioner testified that when he told Spears: "I don't want to be facing life," Spears corrected him and said: "No, you're not facing life. You're facing 7 to 14 years." (Id. at 117-18.) Petitioner told him: "You told me that I was facing life, not 7 to 14 years," to which Spears replied: "No, I didn't say life," and when Petitioner replied: "You did say life," Spears "just said that he referred to my age; if I would receive the 7 to 14 years, that, basically, my life – because I would be 50, 60 years old."[2] (Id. at 118.)

_____

[2] Petitioner was 42 years old when he entered his plea. (CT 13, 44.)

18cv2056-BAS (RBM)

Petitioner testified that he agreed to the plea offer during that meeting but was crying and felt overwhelmed while initialing the boxes on the change of plea form, and that when Spears said: "Look, this is the best I could do for you," Petitioner believed Spears was "basically quitting on me." (Id. at 118-19.) Petitioner said Spears told him that if he signed the change of plea form and accepted the plea offer "you could still take your plea back." (Id. at 120.) He said he would not have signed the plea form if he had known he could not withdraw his plea at any time before sentencing. (Id. at 122-23.) Petitioner was remanded on his probation violation after the preliminary hearing, at which time a protective order was issued precluding him from contacting the victim. When asked by the prosecutor about his contact with the victim in violation of the protective order while he was in jail, Petitioner denied he wanted to withdraw his plea because she had changed her initial position and was now supporting him. (Id. at 123-25.)

The victim testified that when she learned Petitioner had been accused of breaking her nose and ribs she went to a doctor and obtained a medical report, which was entered into evidence, showing she had not suffered fractures to her nose or ribs as a result of their encounter at the motel. (Id. at 138-39.) The prosecutor argued the medical report was irrelevant because broken ribs or a broken nose were never part of the plea agreement, as Petitioner's admission to the great bodily injury allegation was based on the victim being knocked unconscious when he kicked her in the head. (Id. at 155.)

Alan Spears testified that he has been a criminal law specialist since 1975, and has handled about sixteen death penalty cases and many murder cases. (Id. at 142-43.) He was hired by Petitioner's family, coordinated his surrender on the charges, and met with him several times. (Id. at 143-44.) He testified that he explained the plea offer and the waiver of rights to Petitioner, but never told Petitioner he could withdraw his plea prior to sentencing or any other time, and would have taken the case to trial if Petitioner had asked him to do so. (Id. at 144-47.) He said he had a discussion with Petitioner and his family about the plea offer, and it appeared Petitioner wanted to accept it, and Spears thought it was in Petitioner's best interest to accept the offer. (Id. at 148.) Spears said he reviewed

18cv2056-BAS (RBM)

the evidence Petitioner gave him on the computer flash drive, and said it was relevant and admissible and "had a tendency to be mitigating." (Id. at 149-50.)

As to advising Petitioner on his sentence exposure, Spears testified: "I, tongue in cheek, told him that if he got convicted of the kidnapping, he's spending his life in prison, something to that effect. I think he may have taken that as me telling him that it was life top or something like that, although I did not tell him that." (Id. at 150.) When asked if Petitioner told him that seven years was too much, Spears said: "I don't think he made that precise statement, but I do – I got the impression that he felt, in his heart of hearts, that [the victim] had instigated most of the toxic drama between the two of them, and that she was – she always resorted to involving law enforcement in their spats or episodes of physical drama; and that, you know, he was, in fact, the victim, as it were." (Id. at 150-51.) Spears testified that Petitioner was "kind of back and forth" regarding his decision to accept the plea agreement, alternating between: "To hell with it. I'll sign it," and: "No, I don't want to do this," and they signed the plea agreement when he eventually said "let's just get it over with." (Id. at 151.) Spears said he and Petitioner discussed "putting his family through the rigors of a trial," and Petitioner was very concerned about the effect the amount of time he was in prison would have on his family in general and his teenage daughters in particular. (Id. at 148.) Spears did not specifically recall telling Petitioner he was facing a maximum of fourteen years, but said that: "Sounds about right." (Id. at 153.)

The trial judge denied the motion, stating:

> All right. As I said, I do have the benefit of being the judge who took the plea. I did have the interaction with Mr. Anguiano, where he was under oath, and he did tell me that he was making the change of plea. His remorse for making the plea at this time is not a basis to change the plea.
>
> Mr. Spears is a very experienced lawyer. He denied telling Mr. Anguiano that this plea was – I don't know what; but that Mr. Anguiano – it was temporary, and Mr. Anguiano could just withdraw it at any time without showing cause. I just cannot believe that conversation took place. I believe Mr. Spears' testimony that it did not take place.

///

I don't find any good cause for withdrawing the plea, based either on mistake or later discovered evidence that you could not have discovered; because the unconsciousness was clear on the tape, and that was the basis for the great bodily injury. So I am not finding that this late medical report, such as it is, is a basis to withdraw the plea. [¶] So because of that, I'm going to deny the motion to withdraw the plea.

(Id. at 156-57.)

Accordingly, Petitioner's trial counsel told him that if he was convicted of all three charges, in particular the kidnapping count, he could serve up to fourteen years in prison. Because Petitioner was 42 years old at the time, counsel initially tongue-in-cheek suggested it amounted to a life sentence before eventually explaining his maximum exposure was fourteen years. The record shows Petitioner had a difficult time deciding whether to accept the plea because he was apprehensive about serving seven years due, in his own words, to the effect it would have on his teenage daughters, as well as, according to his trial counsel, because he thought of himself as the victim.

Respondent acknowledges that Petitioner's maximum sentence exposure was in fact ten years, eight months, and that his trial counsel provided erroneous advice in that respect. (ECF No. 10-1 at 31-32.) Respondent agrees with the state appellate court that providing erroneous advice regarding sentence exposure can amount to deficient performance of counsel under Strickland. (Id.) The state appellate court did not determine whether the performance of Petitioner's trial counsel was deficient, but rested its denial of the merits of the claim on the Strickland prejudice prong, finding that: "The record does not include objective evidence corroborating Anguiano's claim that he would not have pleaded guilty if he had known his maximum exposure was 10 years, eight months, rather than 14 years." (Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 3.) Because the state court did not address the performance prong, to the extent this Court must address it, a de novo review of that prong would be necessary. Porter v. McCollum, 558 U.S. 30, 39 (2009). However, since the claim fails for lack of prejudice, the Court need not address performance. See Strickland, 466 U.S. at 687 (holding that both deficient performance and

18cv2056-BAS (RBM)

1  prejudice are required to establish constitutionally ineffective assistance of counsel, and if
2  either prong is not established the other need not be addressed).

3       To establish <u>Strickland</u> prejudice Petitioner "must show that there is a reasonable
4  probability that, but for counsel's errors, he would not have pleaded guilty and would have
5  insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.  In order to be entitled to habeas relief in
6  this Court, Petitioner must make a threshold showing that the state court finding that he did
7  not satisfy the <u>Strickland</u> prejudice prong (on the basis that the record does not corroborate
8  his contention that he would not have agreed to a stipulated seven year sentence if he had
9  known he faced only ten years, eight months rather than fourteen years), is contrary to, or
10 an unreasonable application of, <u>Strickland</u>, or is based on an unreasonable determination
11 of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C.
12 § 2254(d).  Even if he satisfies that threshold, he must still show a federal constitutional
13 violation occurred in order to obtain federal habeas relief, which requires independently
14 establishing both deficient performance and prejudice.  <u>Fry</u>, 551 U.S. at 119-22.

15      The conduct underlying the charges in this case, kidnapping, corporal injury to a
16 spouse or roommate, and assault by means likely to inflict great bodily injury, were caught
17 on the motel surveillance video.  The motel manager testified at the preliminary hearing
18 that he and his wife were in their living room watching video screens connected to live
19 closed-circuit surveillance cameras, and they saw Petitioner, who had earlier registered as
20 a guest, pull up in a car, saw the passenger door open and a woman get out, and then saw
21 Petitioner exit the driver's door, walk around the car, and kick the woman in the head.
22 (Lodgment No. 1, Reporter's Prelim. Hr. Tr., 9/19/16 [ECF No. 11-1] at 6-8.) The manager
23 testified that his wife ran to the kitchen door and told Petitioner they were calling the police,
24 and when the manager came outside Petitioner nearly ran him over as he was driving away.
25 (<u>Id</u>. at 9.)  A responding police officer testified that the victim was found sitting in
26 Petitioner's car at his home about four miles from the motel, that she had an abrasion to
27 her left cheekbone, a large lump above her left eyebrow, and a cut to the left corner of her
28 mouth, and that she told the officer she had been involved in about ten prior domestic

violence incidents with Petitioner, at least one of which resulted in his arrest. (Id. at 16, 19, 24, 22, 29.) The appellate court described the motel surveillance video:

> Once parked, Anguiano struck the victim in the face. The victim slumped against the passenger side window for several seconds. When the victim roused, the victim appeared upset and attempted to strike Anguiano numerous times as they talked. Anguiano deflected most of the strikes with his arm.
>
> When the victim got out of the car, Anguiano also exited the car and walked quickly around the back of the car to the passenger side. While the victim's back was turned toward him, Anguiano kicked the victim's back on the left side, knocking the victim to the ground. As the victim lay face down on the ground, Anguiano kicked the left side of the victim's head causing the head to snap back. The victim lay motionless on the ground as Anguiano locked the car and walked away.
>
> The motel manager and his wife called the police after they witnessed the incident through a closed-circuit television feed. When the motel manager's wife confronted Anguiano, and told him they were calling the police, Anguiano returned to the car. He lifted the victim's limp body from the ground, falling backwards with the victim at one point. He put the victim in the car and drove away quickly.

(Lodgment No. 9, People v. Anguiano, No. D071738, slip op. at 2-3.)

Petitioner sent a letter to the trial judge prior to sentencing asking him to view the motel video and take into consideration that his own video evidence showed he was falsely accused in his prior altercations with the victim. (Lodgment No. 4 at 128, 160.)

The trial judge stated at the sentencing hearing:

> I saw the video. I don't accept your representation of the facts, that you think – you urged me, in your letter, to look at the video. I saw it. It does not support the facts as you see them. This is not a one-time incident, although this is egregious; but the police have been involved in your relationship with [the victim] for years. And I know you told me today that it's all her. What I saw was not all her. [¶] And so I think the seven-year term is appropriate. It is a stipulated sentence. I would not have accepted it if I did not think it was an appropriate sentence.

(Id. at 159.)

Petitioner's actions of hitting the victim while they were both in the car, knocking her down when she exited the car, causing her to lose consciousness by kicking her in the head, and then picking her limp body up and putting it back in the car and driving away when told the police had been called, were all caught on videotape and witnessed by two people. His defense to the charges appeared to be that the victim instigated their encounter, as she had instigated all their previous encounters. However, it was after she exited the vehicle that Petitioner knocked her down with a kick to her back, rendered her unconscious with a kick to her head, and forced her unconscious body back into the car and drove away in reaction to the motel manager's wife telling him she had called the police. When pleading guilty to corporal injury to a spouse, he was asked by the trial judge: "And is that because you pushed slash kicked [the victim] to the ground after which you kicked her in the face causing serious bodily injury?", to which he replied: "Yes, your honor." (Lodgment No. 2 at 36.)

Even accepting as true Petitioner's contention that he had relevant and admissible video evidence showing his numerous prior encounters with the victim were "instigated" by her, and he was not guilty of any criminal conduct in those previous encounters, he has not shown he had a viable defense to any of the charges regarding their videotaped encounter at the motel. See People v. Dalerio, 144 Cal.App.4th 775, 781 (2006) ("[T]o prove the crime of kidnapping [in violation of California Penal Code § 207(a) as charged in count one here], the prosecution must prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance."); People v. Daniels, 176 Cal.App.4th 304, 333 (2009) ("A rational jury could have readily concluded that [the victim] was incapacitated and that her state of off-and-on unconsciousness coupled with her inability to move or talk was indicative of a mental impairment that precluded her giving consent at the time that defendant placed her in his car and drove away with her."); Banuelos-Ayon v. Holder, 611 F.3d 1080, 1085 (9th Cir. 2010) (recognizing that conviction for corporal injury to a spouse [in violation of California Penal

Code § 273.5(a) as charged in count two here] "requires that 'corporal injury results from a *direct application of force* on the victim by the defendant.'"), quoting People v. Jackson, 77 Cal.App.4th 574, 580 (2000); People v. Brunton, 23 Cal.App.5th 1097, 1105 (2018) (recognizing that a conviction for assault by means likely to produce great bodily injury [in violation of California Penal Code § 245(a)(4) as charged in count three here] requires an assault with the use of force likely to produce great bodily injury); In re Jonathan R., 3 Cal.App.5th 963, 972-73 (2016) (defining assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another," and recognizing that the use of hands and feet to commit an assault satisfies § 245(a)(4) when the use of force was of the type likely to produce great bodily injury); People v. Wade, 204 Cal.App.4th 1142, 1147-49 (2012) (holding that great bodily injury [as used in the California Penal Code §§ 1192.7 and 12022.7 enhancements here] "means a significant or substantial physical injury," which can be satisfied by a loss of consciousness). Thus, Petitioner would have been exposed to his full sentence exposure of ten years and eight months had he gone to trial.

Although the record supports a finding, as acknowledged by the state appellate court, that Petitioner was uncomfortable accepting a seven-year sentence (84 months), he said the discomfort was based on separation from his daughters, and his trial counsel added that it was also based on his belief he was the victim. He was told by trial counsel he was facing fourteen years (168 months) in prison, when in fact he was facing ten years, eight months (128 months). In other words, he thought he was agreeing to serve one-half of his maximum sentence (84/168), when in reality he was agreeing to serve approximately two-thirds (84/128). There is no support in the record for his contention that he would not have agreed to serve one-half of his maximum sentence if he knew he was actually agreeing to serve two-thirds. That is particularly so in light of the certain prospect of being convicted at trial, which would have exposed him to an additional 44 months in prison, a more than fifty percent increase in the 84-months he reluctantly agreed to be away from his family.

/ / /

Accordingly, the record reflects that Petitioner's reluctance to accept the seven-year offer was based on his concern over separation from his daughters and an obdurate belief he was the victim. There is no plausible basis to find that those concerns would have led him to insist on going to trial had he known he was agreeing to serve two-thirds of his maximum sentence exposure rather than one-half, and in fact suggests the opposite, as he faced certain conviction and exposure to a fifty percent increase in his stipulated sentence had he gone to trial. It was an objectively reasonable application of *Strickland* for the state court to find that "[t]he record does not include objective evidence corroborating Anguiano's claim that he would not have pleaded guilty if he had known his maximum exposure was 10 years, eight months, rather than 14 years." (Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 3.); see Visciotti, 537 U.S. at 25 ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.") That finding is consistent with clearly established federal law even though the state appellate court did not remand to the trial judge for a determination of how the judge would have ruled had the claim been raised on the motion to withdraw the plea. See Hill, 474 U.S. at 59-60 ("As we explained in *Strickland v. Washington*, *supra*, these predictions of [possible outcomes], where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decision-maker.'"), quoting Strickland, 466 U.S. at 695.

In light of the high level of deference this Court gives to the state court application of Strickland, the Court finds that the state court adjudication of claim one is neither contrary to, nor an unreasonable application of, Strickland's prejudice prong. See Hill, 474 U.S. at 59 ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); Richter, 562 U.S. at 105 ("The standards created by *Strickland* and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so.") (citations omitted); Pinholster, 563 U.S. at 181 (holding that the "difficult to meet" standard set forth in § 2254(d) "demands that state

1    court decisions be given the benefit of the doubt.") Petitioner has not shown the state court
2    adjudication is based on an unreasonable determination of the facts in light of the evidence
3    presented in state court. See Miller-El, 537 U.S. at 340 (holding that in order to satisfy
4    § 2254(d)(2), the state court's factual findings must be objectively unreasonable).

5        The Court recommends habeas relief be denied as to claim one irrespective of any
6    procedural default or whether Petitioner could overcome the default, because the state court
7    adjudication is not contrary to, nor an unreasonable application of, clearly established
8    federal law, and is not based on an unreasonable determination of the facts. The Court
9    recommends denying Petitioner's request for an evidentiary hearing on claim one, as such
10   a hearing is not necessary where, as here, the federal claim can be denied on the basis of
11   the state court record. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("It follows that
12   if the record refutes the applicant's factual allegations or otherwise precludes habeas relief
13   [under § 2254(d)], a district court is not required to hold an evidentiary hearing.")

14       **C.    Claim Two**

15       Petitioner alleges his Sixth Amendment right to the effective assistance of counsel
16   was denied by the failure of counsel appointed to represent him on the motion to withdraw
17   his plea to discover that his retained trial counsel had miscalculated his maximum sentence
18   exposure and raise a claim of ineffective assistance of trial counsel in the motion to
19   withdraw the plea. (ECF No. 1 at 7, 16-20.) He argues the state court erred in finding he
20   could have presented that claim in the motion to withdraw his plea, as he did not become
21   aware he had been misadvised by trial counsel until informed by his appellate counsel after
22   the notice of appeal was filed, and the error went unnoticed by the trial judge, trial counsel,
23   the prosecutor and counsel on the motion to withdraw the plea. (Id. at 17-18.)

24       Respondent answers that to the extent this is a freestanding claim of ineffective
25   assistance of counsel it is unexhausted because it was never presented to the California
26   Supreme Court, and the Petition should be dismissed unless Petitioner withdraws the claim
27   or seeks a stay and abeyance, or this Court denies relief on the basis that claim two is not
28   a colorable federal claim. (ECF No. 10-1 at 36-41.) Respondent contends this claim was

raised in the state appellate court only because it was included in Petitioner's declaration attached to the state appellate court habeas petition, which was not attached to the state supreme court petition for review.  (ECF No. 10-1 at 37.)

Petitioner replies in his Traverse that claim two only appears to be a separate claim here because it was included in his declaration attached to his Petition as Attachment B. (ECF No. 18 at 16-17.)  He agrees with Respondent that claim two was presented to the state appellate court only because it was included in his declaration attached to the appellate court habeas petition, and agrees that it is unexhausted because it was not thereafter raised in the state supreme court since he did not attach his declaration to his petition for review, but argues that he does not want his Petition to be construed as containing a separate, unexhausted claim which would subject it to dismissal as containing both exhausted and unexhausted claims.[3]  (Id. at 23-36.)

### 1.    Exhaustion of State Court Remedies

Petitioner presented the claims raised in this action to the state appellate court in his habeas petition in substantially the same manner as he presented them the state supreme court in his petition for review.  (Compare Lodgment No. 11 with Lodgment No. 14.)  The appellate court found Petitioner had raised a claim of ineffective assistance of counsel

---

[3] Generally, applications for writs of habeas corpus which contain unexhausted claims must be dismissed.  See Rose v. Lundy, 455 U.S. 509, 518-22 (1982) (holding that federal courts may not adjudicate "mixed" petitions, i.e., those which include both exhausted and unexhausted claims, but prior to dismissal must allow the petitioner to voluntarily dismiss the petition and return to state court to exhaust, or voluntarily dismiss any unexhausted claims and proceed with the exhausted claims); but see Rhines v. Weber, 544 U.S. 269, 274-78 (2005) (holding that in light of the addition of a one-year statute of limitations to file federal habeas petitions added after Rose v. Lundy was decided, district courts have limited discretion to stay mixed federal habeas petitions and hold them in abeyance while the petitioner returns to state court to exhaust).  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  However, "a federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim."  Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005).

based on allegations that counsel appointed to represent him on the motion to withdraw the plea failed to advise him that his trial counsel had misadvised him. (Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 1 ("Anguiano also asserts the appointed attorney who represented him when he moved to withdraw his guilty plea provided ineffective assistance because she did not tell him his prior attorney had given incorrect information about his maximum prison exposure.") Respondent contends that the only reason this claim was raised in the appellate court is because it was included in Petitioner's declaration he attached to the state appellate court habeas petition, which he did not attach to the state supreme court petition for review. (ECF No. 10-1 at 37.) However, the declaration, which was attached to the state habeas petition as Exhibit B and is attached to the federal Petition as Attachment B, states that Petitioner's appointed counsel on the motion to withdraw the plea did not tell him his correct sentence exposure, and he would have asked counsel to raise claim one in the motion to withdraw his plea had counsel informed him of his correct exposure. (See Pet., Attach. B, ¶ 6, 8 [ECF No. 1 at 29-30].) Petitioner's appellate counsel argued those same points in the body of the appellate court habeas petition, stating:

> As was the case in *People v. Johnson, supra*, 36 Cal.App.4th at page 1357, [counsel on the motion to withdraw the plea]'s failure to properly advise petitioner of his true, maximum exposure only exacerbated the issue. (See *People v. Johnson, supra*, 36 Cal.App.4th at p. 1357.) It was not until petitioner's appellate attorney, Heather L. Beugen, informed him of his true exposure that petitioner understood it. (Ex. B, at p. 53.) [¶] For the reasons stated herein, petitioner has made the requisite showing necessitating the permitting of him to withdraw his plea. His plea "cannot stand" on such a "serious misapprehension of the penal consequences of (the) plea bargain . . . ." (*People v. McCary, supra*, 166 Cal.App.3d at p. 8-9.)

(Lodgment No. 11 at 40.)

The cited page of the Johnson opinion states: "'A plea cannot stand on a serious misapprehension of the penal consequences of a plea bargain.'" Johnson, 36 Cal.App.4th at 1357, quoting People v. McCary, 166 Cal.App.3d 1, 8-9 (1985) (holding that defendant was provided ineffective assistance of counsel where counsel failed to ascertain defendant was not subject to the charged sentence enhancement and inform him so during plea

negotiations). Respondent has not shown that the statements in Petitioner's declaration that he would have asked his appointed counsel on the motion to withdraw his plea to raise claim one had she told him he had been misadvised by trial counsel was the only basis for the state appellate court to read his habeas petition as raising an ineffective assistance of counsel claim on the motion to withdraw the plea. In any case, Petitioner's state supreme court petition for review also references his declaration (see Lodgment No. 14 at 11, 15), also argues that counsel on his motion to withdraw the plea failed to apprise him of his correct exposure or tell him it could be a ground to raise on the motion to withdraw the plea (id. at 15), and presents the facts and law supporting claim two in a similar manner as they were presented in the appellate court habeas petition. (Compare id. at 11-15 with Lodgment No. 11 at 39-40.) The Court finds that claim two was presented in the petition for review in the state supreme court and Petitioner has therefore exhausted state court remedies as to claim two. See Granberry v. Greer, 481 U.S. 129, 133-34 (1987) (holding that a California state prisoner exhausts state judicial remedies by presenting the California Supreme Court with a fair opportunity to rule on the merits of every issue raised in his or her federal habeas petition); see also People v. Braxton, 34 Cal.4th 798, 809 (2004) (recognizing that the California Supreme Court "may decide 'any issues that are raised or fairly included in the petition [for review].'"), quoting Cal. Rules of Court, Rule 29(b)(1).

Although Petitioner states in his Traverse that claim two is not a separate claim, the Court will not decline to address a properly raised claim based on his reaction in his Traverse to Respondent's incorrect contention that the entire Petition is subject to dismissal as a result of a failure to exhaust claim two, because Petitioner has not been provided notice and an opportunity to respond to the Court's finding that claim two is exhausted. See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants."), quoting Boag v. MacDougall, 454 U.S. 364, 365 (1982); Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001) (holding that liberal construction of pro se prisoner habeas petitions is especially important with regard to which claims are presented).

18cv2056-BAS (RBM)

## 2. Merits

Claim two was presented to the state supreme court in a petition for review and summarily denied. (Lodgment Nos. 14-15.) The state appellate court denied the claim in a reasoned opinion, and the Court will presume that the silent denial by the state supreme court adopted the reasoning of the state appellate court, which stated:

> Concerning Anguiano's claim that appointed counsel who represented him on his motion to withdraw his guilty plea was ineffective, Anguiano asserts that had the new attorney told him his maximum prison exposure, he would have asked her to raise his original counsel's ineffective assistance as another basis to withdraw the guilty plea. Anguiano's contention is insufficient to avoid the procedural bars to habeas corpus relief. Counsel has no obligation to present every conceivable claim, and performs competently by presenting those claims counsel deems the strongest. (*In re Reno* (2012) 55 Cal.4th 428, 463-465.) Anguiano has provided no evidence concerning the reasons for the decisions counsel made on the plea withdrawal motion. Further, as we previously explained, the record does not show the maximum prison sentence was a substantial inducement in Anguiano's decision to plead guilty. Thus, Anguiano has not shown counsel on the plea withdrawal motion performed deficiently and thereby prejudiced Anguiano.

(Lodgment No. 12, In re Anguiano, No. D073694, slip op. at 3.)

The state court adjudication of claim two is consistent with clearly established federal law which provides that in order to establish prejudice from the failure to present claim one in the motion to withdraw the plea, Petitioner must show "a probability sufficient to undermine confidence in the outcome" of the motion to withdraw the plea as a result of counsel's error. Strickland, 466 U.S. at 694. As discussed in claim one, Petitioner failed to show Strickland prejudice as a result of being incorrectly advised by his trial counsel that his maximum sentence exposure was fourteen years rather than ten years, eight months, because the record does not support a reasonable probability that he would have insisted on going to trial and risk certain conviction and a nearly fifty percent increase in his sentence had he known he was agreeing to serve two-thirds of his maximum exposure rather than one-half. There is likewise no reasonable probability of a different outcome had the claim been presented in the motion to withdraw the plea. Given the video evidence

against him and the consequent certainty of conviction had he gone to trial, which would have exposed him to a nearly fifty percent increase in his stipulated seven-year sentence, and in light of the fact that his concerns about the length of the sentence were based on time away from his daughters and the untenable ground that he was the victim, it was objectively reasonable for the state appellate court to determine that "the record does not show the maximum prison sentence was a substantial inducement in Anguiano's decision to plead guilty." (Lodgment No. 12, <u>In re Anguiano</u>, No. D073694, slip op. at 3.)

The state court adjudication is consistent with clearly established federal law. <u>See</u> <u>Hill</u>, 474 U.S. at 59 (holding that the prejudice inquiry asks whether "counsel's constitutionally ineffective performance affected the outcome of the plea process."); <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993) (holding that the <u>Strickland</u> prejudice prong "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.") It was not fundamentally unfair for Petitioner to be deprived of the opportunity to raise claim one in his motion to withdraw the plea because it was addressed on the merits in state court on appeal notwithstanding its forfeiture, and he has not shown the outcome of the motion to withdraw the plea is unreliable because he has not shown a reasonable probability of a different outcome had the claim been raised. <u>See</u> <u>Visciotti</u>, 537 U.S. at 25 ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.") Nor has Petitioner shown that the state court finding is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. <u>See</u> <u>Miller-El</u>, 537 U.S. at 340 (holding that in order to satisfy § 2254(d)(2), the factual findings upon which the state court's adjudication of Petitioner's claims rest must be objectively unreasonable).

The Court recommends rejecting Respondent's contention that claim two is unexhausted, and recommends denying habeas relief as to claim two on the basis that the state court adjudication is neither contrary to, nor an unreasonable application of, clearly established federal law, and not based on an unreasonable determination of the facts.

18cv2056-BAS (RBM)

### 3.   Claim Three

Finally, Petitioner alleges in claim three that the state appellate court erred in finding the record fails to corroborate his assertion that he would not have pleaded guilty and would have insisted on going to trial but for the erroneous advice he received from his retained trial counsel regarding his maximum sentence exposure. (ECF No. 1 at 8, 21-23.)  This is a restatement of his argument why he was prejudiced by his trial counsel's failure to properly advise him regarding his maximum sentence exposure.  To the extent this is a freestanding claim, the Court recommends denial of habeas relief for the reasons set forth in claim one.

## V.   **CONCLUSION**

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **April 15, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 15, 2019**.  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATE: March 14, 2019

HON. RUTH BERMÚDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

18cv2056-BAS (RBM)